**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| BETH OSTROSKY, | ) | ELECTRONICALLY FILED |
| | ) | |
| *Plaintiff,* | ) | Case No. 2:24-cv-1546 |
| | ) | |
| vs. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| GIRL SCOUTS OF WESTERN | ) | |
| PENNSYLVANIA, | ) | |
| | ) | |
| *Defendant.* | ) | |
| | ) | |

**COMPLAINT IN CIVIL ACTION**

Plaintiff, Beth Ostrosky, by and through the undersigned counsel, files the within Complaint in Civil Action against Defendant, Girl Scouts of Western Pennsylvania, averring as follows:

**PARTIES**

1.    During her employment with Defendant, Girl Scouts of Western Pennsylvania ("Defendant"), Beth Ostrosky ("Plaintiff") was subjected to discrimination on the basis of her gender and religion, which denied her basic human rights, subjected her to emotional anguish and distress while she performed her job duties, resulted in pecuniary loss, and ultimately served as the motivating and/or but-for factor for her termination. Premised on the facts below, Defendant flagrantly violated Plaintiff's rights protected by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), the National Labor Relations Act, 29 U.S.C. §§ 151-169 (the "NLRA") and the Pennsylvania Human Relations Act, 43 P.S. § 951, *et seq.* (the "PHRA").

2.    Plaintiff is an adult biological female who currently resides in New Kensington, Pennsylvania 15068.

3.      Plaintiff is, and has been since a young child, an adherent to the Christianity religion and is an active practicing, Christian.

4.      Defendant is a Pennsylvania nonprofit corporation with a registered address of 503 Martindale Street, Suite 500, Pittsburgh, Pennsylvania 15212.  Plaintiff reported to Defendant's Greensburg, Pennsylvania office, which is located at 126 East Otterman Street, Greensburg, Pennsylvania 15601 (the "Facility").

5.      Further, Defendant is a youth organization for girls in the United States and American girls living abroad which is dedicated to training girls in good citizenship, good conduct, and outdoor activities.

## JURISDICTION AND VENUE

**A.      This Court Possesses Subject Matter Jurisdiction Pursuant to 28 U.S.C. § 1331 and Supplemental Jurisdiction Pursuant to 28 U.S.C. § 1367.**

6.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (the "Federal Question Jurisdiction"), as Plaintiff is advancing claims under Title VII and the NLRA (collectively, Plaintiff's claims arising under Title VII and the NLRA are hereinafter identified as the "Federal Law Claims").

7.      Plaintiff is also advancing statutory claims under the PHRA (Plaintiff's claim arising under the PHRA is hereinafter referred to as the "State Law Claim").

8.      This Court may exercise supplemental jurisdiction over the State Law Claim pursuant to 28 U.S.C. § 1367(a) as the Federal Law Claims and the State Law Claim share the same nucleus of operative facts.

9.      Further, the operative facts between the Federal Law Claims and the State Law Claim mirror one another to such a degree that they form the "same case or controversy" under

Article III § 2 of the United States Constitution which further supports this Court's exercise of supplemental jurisdiction over the State Law Claim.

**B.     The United States District Court for the Western District of Pennsylvania is the Appropriate Venue for this Matter Pursuant to 28 U.S.C. § 1391(b).**

10.     Venue is proper in the United States District Court for the Western District of Pennsylvania, Pittsburgh Division (hereinafter, the "Western District") as a substantial part of the events and omissions giving rise to the Federal Law Claims occurred within this judicial district.

11.     Specifically, these events and omissions occurred within Westmoreland County, Pennsylvania which is one of the counties encompassed by the Western District.

12.     This matter is properly before the Pittsburgh Division of the Western District given the conduct complained of herein arose in Westmoreland County, Pennsylvania, and conduct arising within Westmoreland County is docketed within the Pittsburgh Division of the Western District pursuant to Western District of Pennsylvania Local Rules, LCvR 3.

**C.     This Court May Exercise Personal Jurisdiction Over Defendant.**

13.     This Court may exercise personal jurisdiction over Defendant as Defendant has subjected itself to jurisdiction of Pennsylvania's tribunals pursuant to 42 Pa. C.S. § 5301.

14.     The Supreme Court has held "the paradigm all-purpose forums for general jurisdiction are a corporation's place of incorporation and principal place of business." *Daimler AG v. Bauman*, 571 U.S. 117, 118 (2014) (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011)).

15.     Personal jurisdiction is proper over a defendant if the defendant is a registered Pennsylvania entity and has thus "consented" to the exercise of general personal jurisdiction pursuant to 42 Pa. C.S. § 5301. *Aetna Inc. v. Kurtzman Carson Consultants, LLC*, No. 18-470,

2019 BL 114021, at *5 (E.D. Pa. Mar. 29, 2019) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985); *Bane v. Netlink, Inc.*, 925 F.2d 637, 641 (3d Cir. 1991)).

**D.    Plaintiff Has Exhausted Her Administrative Remedies.**

16.    Plaintiff has satisfied all procedural and administrative prerequisites under 42 U.S.C. § 2000e-5 and 43 P.S. § 959, and now may proceed to bring this action before the Court. Specifically:

a.    On or about May 2, 2024, Plaintiff dual filed a charge of discrimination with the Equal Employment Opportunity Commission (hereinafter, the "EEOC") seeking redress for the Federal Law Claims and the State Law Claims at charge number 533-2024-01903 (hereinafter, the "EEOC Charge") and with the Pennsylvania Human Relations Commission (hereinafter, the "PHRC").

b.    On August 20, 2024, the EEOC issued the Determination and Notice of Rights (hereinafter, the "DNR Notice") wherein Plaintiff was afforded 90 days within which to timely file the Federal Law Claims. A true and correct copy of the RTS Notice is attached hereto as **"Exhibit A"** and incorporated herein. The instant Complaint is filed within the 90-day time period.

## FACTUAL BACKGROUND

17.    On or about October 16, 2018, Plaintiff commenced her employment with Defendant in the position of "Membership Volunteer Support Associate. "

18.    In or around 2022, Plaintiff was promoted to the position of "Volunteer Support and Recruitment Associate" wherein she was compensated on a salaried basis of $42,000.00 per annum.

4

19.     Plaintiff received a performance review by Defendant every quarter during her tenure of employment with Defendant wherein she received positive marks and comments on each and every one.

20.     In or around late February 2023, Plaintiff attended a Membership Engagement team meeting (the "Team Meeting"). The Team Meeting was attended by a majority of the department's staff (the "Team Members"), as well as Defendant's Chief Membership Officer, Carrie Yopp ("Ms. Yopp") and Defendant's Director of Membership, Kimberly Bracken (hereinafter, "Ms. Bracken").

21.     At the Team Meeting delineated above, Ms. Yopp circulated stickers that were supposed to refer to and provide female empowerment. However, Plaintiff found some of these stickers incredibly offensive and not appropriate for the workplace environment.

22.     Specifically, two stickers said, "pussy power," and "avoid abortions, support vasectomies." When Plaintiff noticed these offensive stickers and asked publicly who purchased them, Ms. Yopp acknowledged that she did.

23.     Thereafter, Plaintiff spoke with both Ms. Yopp and Ms. Bracken, wherein she complained that she found the stickers offensive due to her gender and Christian beliefs and expected other staff to find them offensive as well.

24.     Unsatisfied by the response she received from Mmes. Bracken and Ms. Yopp, Plaintiff complained about the stickers to Defendant's human relations department.

25.     Instead of disciplining Ms. Yopp for disseminating offensive material, Defendant issued a "level 3" corrective action to Plaintiff on or about March 3, 2023, for being rude and disrespectful during the Team Meeting set forth above wherein she engaged in a protected activity by complaining about the distribution of sexually offensive stickers.

26.     On or about March 30, 2023, Defendant reduced Plaintiff's "level 3" corrective action to "level 2, " a lesser disciplinary measure as the information surrounding the "level 3" corrective action was found to possess untruths.  Furthermore, agents of Defendant explicitly admitted to Plaintiff that the Team Meeting and stickers lacked professionalism in design and execution.

27.     Throughout Plaintiff's employment, Plaintiff was widely known to be associated with unionization efforts.  In addition to generally supporting such efforts, she was a member of the committee of employees of Defendant working with the Office and Professional Employees International Union Local 792 (OPEIU Local 792) to form a union of Defendant's workers.

28.     In late May 2023, Defendant's management held a meeting to provide information as to the cons of unionization.  After this meeting, Debra Gerhardt ("Ms. Gerhardt"), a member of Defendant's management team, then told Plaintiff that she should be cautious about unionizing because she could get in trouble, or even worse, be terminated.

29.     From May 27, 2023, through November 2023, Plaintiff and the Team Members were given astronomically high, unobtainable membership quotas to be met (the "Team Goals").

30.     As of August 1, 2023, none of the Team Members had met the Team Goals and therefore were issued a Performance Improvement Plan (the "PIP").

31.     In September of 2023, a great majority of the Team Members were explicitly provided with leeway relative to the Team Goals, including provision of a "conference worksheet" detailing the steps they were to take to ensure meeting the Team Goals.

32.     Contemporaneous with the above, Plaintiff and Rachel Gilliam ("Ms. Gilliam") were subjected to a "level 1" corrective action for failing to meet the Team Goals.  Notably, both Plaintiff and Ms. Gilliam took umbrage with the offensive stickers.

33.     On or about December 6, 2023, Plaintiff was terminated by Defendant through its

agents, Kate Davis ("Ms. Davis") and Lori Galassie ("Ms. Galassie") via a virtual meeting for the

stated reason of not ratifying the "level 1" corrective action related to the Team Goals.

**COUNT I**
**UNLAWFUL TERMINATION ON THE BASIS OF GENDER**
**IN VIOLATION OF TITLE VII AND THE PHRA**
**42 U.S.C. § 2000e, *et seq.*; 43 P.S. § 951, *et seq.***

34.     Plaintiff incorporates the allegations in the paragraphs set forth above, as if fully

set forth at length herein.

35.     Title VII was enacted in 1964 to prohibit discrimination in employment based on

color, national origin, race, religion, and sex in response to the civil rights movement of the 1950s

and 1960s.  It was created to enforce constitutional rights, to confer jurisdiction upon the District

Courts to provide relief against discrimination in public accommodations, and to authorize the

Attorney General to institute suits to protect constitutional rights in public facilities and public

education.  42 U.S.C. § 2000e, *et seq.*  Further, Title VII applies to employers with 15 or more

employees, including government, education, and labor organizations.

36.     In order to establish a *prima facie* case of a discriminatory discharge, an employee

must show: (1) they are a member of a protected class; (2) they were subjected to an adverse

employment action; (3) they were qualified to perform the job; and (4) their employer treated

similarly situated employees outside his protected class more favorably. *Baker v. JEA*, No. 22-

11335, 2023 U.S. App. LEXIS 22644, at *11 (11th Cir. Aug. 28, 2023) (citing *Crawford v. Carroll*,

529 F.3d 961, 970 (11th Cir. 2008)).

**A.      Plaintiff is a Member of a Protected Group.**

37.     At all times relevant hereto, Plaintiff was a member of a protected group insofar as

Plaintiff is a biological female.

7

**B.      Plaintiff Suffered an Adverse Employment Action Effectuated by Defendant.**

38.     On or about April 29, 2023, Defendants terminated, or all agreed to terminate, Plaintiff's employment and thereby Plaintiff suffered the ultimate adverse action.

**C.      Plaintiff was Qualified to Perform the Job.**

39.     Plaintiff possessed and exercised the skill, experience, and ability needed to perform the tasks and job duties of the "Volunteer Support and Recruitment Associate" position, as buttressed by the fact that she received positive performance years the duration of her employment.

40.     Additionally, Plaintiff was sufficiently skilled in the areas of comprehension, communication, interpretation, and analysis.  Additionally, Plaintiff possessed the physical stamina, health, and wellbeing to perform any manual labor tasks associated with the "Volunteer Support and Recruitment Associate" position.

**D.      Plaintiff was Disparately Treated Under Circumstances That Support an Inference of Unlawful Discrimination.**

41.     Defendant disparately treated Plaintiff by and through her termination, which was borne out of gender discrimination, as evidenced by the offensive nature – particularly to females – of the stickers distributed at the Team Meeting which included the word "pussy".

42.     Further, Defendants held Plaintiff to more stringent standards than her coworkers outside her protected class.  This heightened scrutiny together with the undermining behavior provided Defendant with the pretextual reason to terminate Plaintiff's employment.

43.     As a direct and proximate result of Defendant's conduct described hereinabove, Plaintiff has suffered not only tangible economic loss in the form of lost back pay and benefits and lost front pay and benefits, but also substantial emotional and physical distress, embarrassment

and humiliation, pain and suffering, and is entitled to compensatory damages for these injuries, in addition to the tangible economic losses she suffered and will continue to suffer.

WHEREFORE, Plaintiff, Beth Ostrosky, seeks the damages set forth in the *Ad Damnum* Clause and Request for Relief of this Complaint, *infra*.

**COUNT II**
**RETALIATORY TERMINATION ON THE BASIS OF GENDER**
**IN VIOLATION OF TITLE VII AND THE PHRA**
**42 U.S.C. § 2000e, *et seq.*; 43 P.S. § 951, *et seq.***

44.    Plaintiff incorporates the allegations in the paragraphs set forth above, as if fully set forth at length herein.

45.    Title VII makes it unlawful for an employer to retaliate against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter…" 42 U.S.C. § 2000e-3(a).

46.    To establish a claim for retaliation on the basis of engaging in a protected activity, a plaintiff must show "(1) [that he engaged in a] protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 300 (3d Cir.2007) (quoting *Fogleman v. Mercy Hosp. Inc.*, 283 F.3d 561, 567–68 (3d Cir.2002)): *see also Canada v. Samuel Grossi & Sons, Inc.*, 49 F.4th 340, 346 (3d Cir. 2022).

**A.    Plaintiff was Engaging in a Protected Employee Activity**.

47.    As set forth above, Plaintiff complained to Defendant's human relations department about the offensive stickers in or around late February 2023.

**B.      Plaintiff Suffered an Adverse Action by Defendant**.

48.      Immediately subsequent to Plaintiff's complaint to Defendant's human relations department concerning the offensive stickers, on or about March 3, 2023, Defendant issued a "level 3" corrective action to Plaintiff

49.      On or about December 6, 2023, Plaintiff suffered the ultimate adverse action by Defendant in that her employment was terminated.

**C.      A Causal Connection Exists Between Plaintiff's Protected Activity and the Defendant's Adverse Action.**

50.      A mere few days after Plaintiff's submission of the complaint to Defendant's human relations department concerning the offensive stickers, Plaintiff was issued the "level 3" corrective action.

51.      A short time thereafter, Plaintiff was terminated from her employment with Defendant.

52.      As a direct and proximate result of Defendant's conduct described hereinabove, Plaintiff has suffered not only tangible economic loss in the form of lost back pay and benefits and lost front pay and benefits, but also substantial emotional and physical distress, embarrassment and humiliation, pain and suffering, and is entitled to compensatory damages for these injuries, in addition to the tangible economic losses she suffered and will continue to suffer.

WHEREFORE, Plaintiff, Beth Ostrosky, seeks the damages set forth in the *Ad Damnum* Clause and Request for Relief of this Complaint, *infra*.

**COUNT III**
**UNLAWFUL TERMINATION ON THE BASIS OF RELIGION**
**IN VIOLATION OF TITLE VII AND THE PHRA**
**42 U.S.C. § 2000e, *et seq.*; 43 P.S. § 951, *et seq.***

53.      Plaintiff incorporates the above paragraphs, as if fully set forth at length herein.

54.     Plaintiff experienced discrimination based upon her religion, which included heightened scrutiny not experienced by her similarly situated non-Christian coworkers.

55.     Ultimately, as a result of religious discrimination, Defendant terminated Plaintiff's employment.

56.     "In order to establish a *prima facie* case of racial discrimination, an employee must show that: (1) they are a member of a protected group; (2) they are qualified for the position at issue; (3) they were discharged or suffered some adverse employment action by the employer; and (4) they were treated less favorably than other similarly situated employees outside the protected group." *In re Tribune Media Co.*, 902 F.3d 384, 402 (3d Cir. 2018) (internal citations and alterations omitted).

**A.     Plaintiff is a Member of a Protected Group and Was Qualified for the Position At Issue.**

57.     At all times relevant hereto, Plaintiff was a member of a protected group insofar as Plaintiff is a practicing Christian.

58.     Plaintiff possessed and exercised the skill, experience, and ability needed to perform the tasks and job duties of the "Volunteer Support and Recruitment Associate" position, as buttressed by the fact that she received positive performance years the duration of her employment.

59.     Additionally, Plaintiff was sufficiently skilled in the areas of comprehension, communication, interpretation, and analysis.  Additionally, Plaintiff possessed the physical stamina, health, and wellbeing to perform any manual labor tasks associated with the "Volunteer Support and Recruitment Associate" position.

**B.    Plaintiff Suffered Adverse Employment Actions and Was Treated Less Favorably than Similar Employees Outside Her Protected Class.**

60.    The actions set forth above, including but not limited to heightened scrutiny and termination, were actions not suffered by her similarly situated non-Christian coworkers.

61.    As a direct and proximate result of Defendant's conduct described hereinabove, Plaintiff has suffered not only tangible economic loss in the form of lost back pay and benefits and lost front pay and benefits, but also substantial emotional and physical distress, embarrassment and humiliation, pain and suffering, and is entitled to compensatory damages for these injuries, in addition to the tangible economic losses she suffered and will continue to suffer.

WHEREFORE, Plaintiff, Beth Ostrosky, seeks the damages set forth in the *Ad Damnum* Clause and Request for Relief of this Complaint, *infra*.

**COUNT IV**
**UNLAWFUL TERMINATION ON THE BASIS OF PROTECTED ACTIVITY**
**IN VIOLATION OF THE NLRA**
**29 U.S.C. §§ 151-169**

62.    Plaintiff incorporates the above paragraphs, as if fully set forth at length herein.

63.    The NLRA was enacted in 1935 to protect the rights of employees and employers, encourage collective bargaining, and curtail certain private sector labor and management practices.

64.    In order to establish a *prima facie* case of an unlawful termination for engaging in a protected activity under the purview of the NLRA, an employee must show: (i) "the employee was engaged in protected activity"; (2) "the employer knew of the employee's protected activity"; and (3) "the employer acted as it did on the basis of anti-union animus. Charter Commc'ns, 939 F.3d at 815 (quoting Airgas, 916 F.3d at 561); accord McKinney v. Ozburn-Hessey Logistics, LLC, 875 F.3d 333, 340 (6th Cir. 2017); FiveCAP, 294 F.3d at 777.

**A.    Plaintiff Was Engaged in Unionization Efforts.**

65.    Throughout Plaintiff's employment with Defendant, Plaintiff actively took part in unionization efforts.

**B.    Defendant Was Explicitly Aware of Plaintiff's Unionization Efforts.**

66.    Throughout Plaintiff's employment with Defendant, Plaintiff was widely known to be associated with unionization efforts.

67.    In addition to supporting such efforts, Plaintiff was further a member of the committee of Defendant's employees working with the Office and Professional Employees International Union Local 792 (OPEIU Local 792) to form a union of Defendant's workers.

**C.    Defendant's Actions Were Based on Anti-Union Animus.**

68.    As set forth above, in late May 2023, Defendant's management held a meeting to provide information as to the cons of unionization. After that meeting, Ms. Gerhardt, a member of Defendant's management team, then told Plaintiff that she should be cautious about unionizing because she could get in trouble, or even worse, be terminated.

69.    As a direct and proximate result of Defendant's conduct described hereinabove, Plaintiff has suffered not only tangible economic loss in the form of lost back pay and benefits and lost front pay and benefits, but also substantial emotional and physical distress, embarrassment and humiliation, pain and suffering, and is entitled to compensatory damages for these injuries, in addition to the tangible economic losses she suffered and will continue to suffer.

WHEREFORE, Plaintiff, Beth Ostrosky, seeks the damages set forth in the *Ad Damnum* Clause and Request for Relief of this Complaint, *infra*.

### *AD DAMNUM* CLAUSE AND REQUEST FOR RELIEF

Plaintiff, Beth Ostrosky, respectfully requests this Honorable Court to enter judgment in his favor, and against Defendant, Girl Scouts of Western Pennsylvania, and prays for relief as follows:

(a) Declare and find that Defendant committed one or more of the following acts:

    (i) Violated Title VII and the PHRA by wrongfully terminating Plaintiff on the basis of her gender;

    (ii) Violated Title VII and the PHRA by retaliating against Plaintiff for a protected activity;

    (iii) Violated Title VII and the PHRA by wrongfully terminating Plaintiff on the basis of her religious beliefs; and

    (iv) Violated the NLRA by terminating Plaintiff on the basis of a protected activity;

(b) Award compensatory damages, including but not limited to past and future pecuniary and non-pecuniary losses, including suffering, mental anguish, inconvenience, and loss of enjoyment of life;

(c) Award equitable relief in the form of back pay and front pay, including overtime pay;

(d) Award liquidated damages;

(e) Award punitive damages sufficient to deter SGU from engaging in future conduct of a similar nature;

(f) Award injunctive and other equitable relief as provided by law;

14

(g)    Award reasonable attorneys' fees and costs;

(h)    Award pre-judgment and continuing interest as calculated by the Court;

(i)    Grant leave to amend to add claims under state and federal laws; and

(j)    Award such other and further relief as this Court deems just, equitable, and

proper.

**JURY TRIAL DEMANDED.**

Respectfully submitted,

**THE WORKERS' RIGHTS LAW GROUP, LLP**

Date: November 12, 2024

By: */s/ Erik M. Yurkovich*
Erik M. Yurkovich (Pa. I.D. No. 83432)

The Workers' Rights Law Group, LLP
Foster Plaza 10
680 Andersen Drive, Suite 230
Pittsburgh, PA 15220
Telephone: 412.910.8057
Fax: 412.910.7510
erik@workersrightslawgroup.com

*Counsel for Plaintiff, Beth Ostrosky*